IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00065-PAB-MJW

REYNOLDO L. FLORES,

     Applicant,

v.

JOHN D. CHAPDELAINE, Acting Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER OF DISMISSAL

---

Applicant, Reynold L. Flores, is a prisoner in the custody of the Colorado
Department of Corrections who currently is incarcerated at the Sterling, Colorado,
correctional facility.  On February 15, 2012, he filed *pro se* an amended application for
a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 5] challenging the
validity of his conviction in Denver District Court case number 99CR2960.  He has paid
the $5.00 filing fee.

On February 21, 2012, Magistrate Judge Boyd N. Boland ordered Respondents
to file within twenty-one days a pre-answer response limited to addressing the
affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and/or exhaustion of state
court remedies under 28 U.S.C. § 2254(b)(1)(A).  On April 12, 2012, after being granted
an extension of time, Respondents filed their pre-answer response [Docket No. 13].  On
May 3, 2012, Mr. Flores filed a reply [Docket No. 14] to the pre-answer response.  On

June 13, 2012, the Court entered an order [Docket No. 17] denying the application in part and directing Respondents to file an answer that fully addressed the merits of the remaining claims within thirty days.  The June 13 order to answer allowed Mr. Flores to file a reply within thirty days of the filing of the answer.  Also on June 13, the Court entered an order [Docket No. 18] for the state court record.

On July 13, 2012, Respondents filed an answer [Docket No. 20].  On July 16, 2012, the state court record [Docket No. 21] was filed.  On August 1, 2012, Mr. Flores filed a reply [Docket No. 22].  On August 16, 2012, Respondents filed an amended answer [Docket No. 23] to correct the filing of incomplete exhibits with the July 13 answer.  On August 24, 2012, Respondents filed a CD-ROM [Docket No. 24] to replace a defective CD-ROM submitted on June 13 as part of the state court record.

On August 24, 2012, the Court, noting certain deficiencies in the filed state court record, ordered Respondents to submit within thirty days the full state court record and a second amended answer with citations to volumes and pages that corresponded with the full state court record.  [Docket No. 25].  On September 7, 2012, Respondents submitted the second amended answer [Docket No. 27] and a notice [Docket No. 28] of inability to comply fully with this Court's August 24 order.  Respondents asserted that the flat file of all documents referenced in the state court register of actions in Denver District Court Case No. 99CR2960 currently is in possession of the Colorado Court of Appeals and will be unavailable to this Court until two state appeals initiated by Mr. Flores are concluded.  [Docket No. 28 at 2, ¶ 3 and n.1].  At the same time Mr. Flores is pursuing the instant habeas corpus action, he is appealing from the denial of a restitution order in No. 99CR2960, and, on August 31, 2012, he initiated a second

2

appeal, apparently to appeal the new sentence imposed on August 3, 2012. *Id.*; *see also* Docket No. 27, ex. R (state court register of actions) at 8. The Court has proceeded on the current partial record because the documents necessary to reach a ruling in this action are before the Court.

In considering Mr. Flores' filings, the Court is mindful that he is proceeding *pro se* and, therefore, the Court construes his pleadings liberally and holds them to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* litigant retains the burden to allege sufficient facts to state a viable claim. Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

## I.  STATE COURT PROCEEDINGS

Mr. Flores was convicted by a jury in Denver District Court, Case No. 99CR2960, on charges of sexual assault on a child by force, second-degree kidnapping, third-degree sexual assault, and two counts of first-degree sexual assault. On April 6, 2001,

the trial court imposed consecutive sentences totaling 144 years.  *See* Docket No. 13,

ex. A (state register of actions) at 3-5, 17; *see also* docket No. 27, ex. R (state register

of actions) at 3-6.  The Colorado Court of Appeals affirmed on direct appeal.  *See*

Docket No. 13, ex. C (*People v. Flores*, No. 01CA0919 (Colo. Ct. App. Oct. 18, 2007)

(not published) (*Flores I*)).  On February 4, 2008, the Colorado Supreme Court denied

certiorari review [Docket No. 13, ex. E].

On June 5, 2008, Mr. Flores filed a timely motion for sentence reconsideration

under Rule 35(b) of the Colorado Rules of Criminal Procedure [Docket No. 13, ex. A at

11-12; *see also* docket No. 27, ex. R at 14].  It does not appear from the state register

of actions that the trial court ruled on the motion.

On March 2, 2009, Mr. Flores filed a motion for postconviction relief pursuant to

Colo. R. Crim. P. 35(c) [Docket No. 13, ex. A at 11; *see also* docket No. 27, ex. R at

14], which the trial court denied on April 20, 2009.  [Docket No. 13, ex. A at 11; *see also*

docket No. 27, ex. R at 14].  Mr. Flores did not appeal.  Instead, on May 6, 2009, he

filed a petition for rehearing, [Docket No. 13, ex. A at 11; *see also* docket No. 27, ex. R

at 14], which in Colorado is deemed to be a second motion, *see People v. Adams*, 905

P.2d 17 (Colo. App. 1995), and which the trial court treated as a second Colo. R. Crim.

P. 35(c) motion for postconviction relief.  [Docket No. 13, ex. A at 10-11; *see also*

docket No. 27, ex. R at 13].  On May 29, 2009, the trial court denied the petition.

[Docket No. 13, ex. A at 10-11; *see also* docket No. 27, ex. R at 13].  Mr. Flores

appealed, and the Colorado Court of Appeals affirmed in part, reversed in part, and

remanded for the trial court to correct an illegal sentence.  *See* Docket No. 13, ex. H

(*People v. Flores*, No. 09CA1436 (Colo. Ct. App. May 26, 2011) (unpublished) (*Flores*

4

*II*)).  On October 11, 2011, the Colorado Supreme Court denied certiorari review [Docket No. 13, ex. J].

On August 3, 2012, Mr. Flores was resentenced to an aggregate prison term of 120 years.  Mr. Flores' resentencing does not appear to affect the disposition of his claims.  Upon resentencing the Colo. R. Crim. P. 35(b) motion not ruled upon should have become moot.  On August 31, 2012, Mr. Flores filed a notice of appeal, apparently to appeal the new sentence imposed on August 3, 2012.  ECF No. 28 at 2, n.1; *see also* ECF No. 27, ex. R at 8.

## II. FEDERAL COURT PROCEEDINGS

On January 11, 2012, Mr. Flores filed his original application for writ of habeas corpus [Docket No. 1] in this Court.  On February 15, 2012, he filed an amended application [Docket No. 5].  In their pre-answer response [Docket No. 13], Respondents conceded that the instant action was filed within the one-year limitation period in 28 U.S.C. § 2244(d).  Therefore, the Court did not address further the one-year limitation period.  Mr. Flores asserted the following claims.

1.      Destruction of exculpatory evidence;

2.      Ineffective assistance of counsel for failing to rebut DNA evidence;

3.      Ineffective assistance of counsel for failing to expose and argue discrepancies in eyewitness testimony;

4.      Ineffective assistance of counsel for failing to present an alibi defense;

5.      Ineffective assistance of counsel for failing to investigate and rebut the victim's misidentification of Applicant;

6.      Ineffective assistance of appellate counsel for failing to prosecute

5

adequately Applicant's direct appeal.

       7.      Cumulative ineffective assistance of counsel.

In the pre-answer response, Respondents argued that Mr. Flores satisfied the exhaustion requirement as to claim one.  They also alleged he satisfied the exhaustion requirement as to parts of claims two and five, contending that the parts he failed to exhaust now were procedurally defaulted.  They further argued Mr. Flores failed to exhaust claims three, four, six, and seven, which they also maintained were procedurally defaulted.

In the partial dismissal order of June 13, 2012, the Court dismissed the following unexhausted claims as procedurally barred:  (1) the portion of claim one asserting ineffective assistance of counsel; (2) the portion of claim two asserting ineffective assistance for counsel's failure to have employed other means to rebut the evidence; (3) claim three; (4) claim four; (5) the portion of claim five alleging ineffective assistance based upon anything other than counsel's performance during the photo lineup; (6) claim six; and (7) the portion of claim seven alleging ineffective assistance based upon cumulative error denying effective assistance based upon counsel's failure to investigate bite-mark evidence and retain an expert in adolescent victim psychology.

The Court then directed Respondents to file an answer in compliance with Rule 5 of the Rules Governing Section 2254 Cases that fully addresses the merits of the following exhausted claims: (1) the portion of claim one asserting a due-process violation; (2) the portion of claim two asserting counsel was ineffective for failing to have his DNA expert testify at trial; (3) the portion of claim five alleging ineffective assistance based upon counsel's performance during the photo lineup; and (4) the portion of claim

seven asserting cumulative error denying effective assistance based upon counsel's failure to develop expert testimony with regard to DNA evidence and eyewitness accuracy.

Currently before the Court is the answer [Docket No. 20] Respondents filed on July 13, 2012 and amended answer [Docket No. 23] Respondents filed on August 16, 2012; the state court record [Docket No. 21] filed on July 16, 2012 and supplemented on August 22, 2012 with a replacement CD-ROM [Docket No. 24]; Mr. Flores' reply [Docket No. 22] filed on August 1, 2012; the second amended answer [Docket No. 27]; and the state court record [Docket No. 29] submitted on September 7, 2012.  The Court now will address the exhausted claims on the merits.

## III. ANALYSIS

### A.  Standard of Review on the Merits

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011); *see also Early v. Packer*, 537 U.S. 3, 8 (2002). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 131 S. Ct. at 784. Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 784. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "This 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to 28 U.S.C. § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if:  (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the

facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id*.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Harrington*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply

the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ."  *Id*.;

*see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must

conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a

state court proceeding regardless of whether the state court found error or conducted

harmless error review).   Under *Brecht*, a constitutional error does not warrant habeas

relief unless the Court concludes it "had substantial and injurious effect" on the jury's

verdict.  *Brecht*, 507 U.S. at 637.   "A 'substantial and injurious effect' exists when the

court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."

*Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).   "Grave

doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual

equipoise as to the harmlessness of the error."   *O'Neal*, 513 U.S. at 435.  The Court

make this harmless error determination based upon a review of the entire state court

record.  *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is

not procedurally barred, the Court must review the claim *de novo* and the deferential

standards of 28 U.S.C. § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193,

1196 (10th Cir. 2004).

## B.  Merits of Remaining Claims

### 1.  Claim One

In the partial dismissal order of June 13, 2012, the Court dismissed as

procedurally barred the portion of claim one asserting ineffective assistance of counsel.

Currently pending before the Court is the portion of claim one asserting a due-process

violation.

Mr. Flores argued on direct appeal before the Colorado Court of Appeals in

*Flores I* that "the destruction by the prosecution of evidence favorable to an accused

violates due process where the evidence is material either to guilt or to punishment."

Docket No. 13, ex. B (defendant's opening brief) at 8.  He maintains his due process

rights were violated when police sold his car, which constituted "the sole physical

evidence of 'place of the alleged crime,'" at public auction.  Docket No. 5 at 11.

The Colorado Court of Appeals recounted the factual background for the claim

as follows:

> Police impounded defendant's car and subsequently arrested
> defendant.  Forensic investigators tested the car, but did not find further
> physical evidence.  Although the lead detective working on the case
> maintained the hold order on the car, it was inadvertently sold at a police
> auction.  Police recovered the car, but only after it had been altered by its
> new owners.
>
> Defendant then filed a pretrial motion to dismiss the charges
> against him, alleging his due process rights were violated by the state's
> inadvertent sale and alteration of the car because, according to
> defendant, the car was so closely linked to his identification as the
> perpetrator.
>
> The trial court held an evidentiary hearing on the motion.  The
> purchaser of the car testified that he replaced a missing seat in the car,
> installed a new stereo, and fixed the car's overheating problem.  The lead
> detective testified that the forensic investigators tested the car for physical
> evidence, removed a seat, and also photographed the entire car both
> before and after all alterations were made.
>
> The trial court determined that the car was not apparently
> exculpatory when it was sold, and that defendant's due process rights
> were not violated.   Accordingly, the court denied defendant's motion to
> dismiss.

Docket No. 13, ex. C at 2-3.

Under the Due Process Clause, the police must preserve clearly exculpatory evidence in their possession that might not be available to the defendant through other means. *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Bullock v. Carver*, 297 F.3d 1036, 1056 (10th Cir. 2002). To obtain relief, a defendant must show that police destroyed evidence with "an exculpatory value that was apparent before the evidence was destroyed," and that was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489. Where the destroyed evidence is only potentially useful, i.e., "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must prove that the police acted in bad faith in destroying the evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988); *Bullock*, 297 F.3d at 1056.

The Colorado Court of Appeals analyzed the claim as follows:

> Whether a defendant is deprived of due process because of the destruction of evidence presents mixed questions of fact and law. We defer to the trial court's factual findings if supported by the record and review de novo its resolution of legal questions. *See People v. Arroya*, 988 P.2d 1124, 1129 (Colo. 1999); *see also Quintano v. People*, 105 P.3d 585, 592 (Colo. 2005) (denial of due process is a question of law).

> To establish a due process violation for the failure to preserve exculpatory evidence, the defendant must show three things: (1) the evidence was destroyed by state action; (2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means. *People v. Victorian*, 165 P.3d 890, 893 (Colo. App. 2007).

> Here, the trial court determined, and the parties do not dispute, that the alterations to the car were a result of state action and that the state did not act in bad faith.

Defendant, however, argues that the trial court erred in determining that the car was not apparently exculpatory when it was sold because (1) before the car was altered, it had mechanical deficiencies that would have made it impossible for him to drive the victim the distances she described; (2) contrary to the victim's testimony, the car was missing a seat before the purchaser installed a new one; (3) before the car's purchaser installed a new stereo, it did not have a properly functioning radio that could have played music as the victim described; and (4) the seats of the car were cloth and not vinyl as the victim testified.  We disagree.

### A.  Apparent Exculpatory Value

The trial court found, with record support, that any possible exculpatory value in the mechanical difficulties the car had before it was altered was not apparent to the investigators at the time the car was inadvertently sold.  Indeed, the lead detective testified that the forensic investigators conducted every test they could and, having discovered no additional physical evidence, determined that there was no apparent reason to keep the car.  *See People v. Franklin*, 782 P.2d 1202, 1207 (Colo. App. 1989) (exculpatory value of evidence must be apparent to investigators before it was destroyed).

Similarly, the trial court found, with record support, that the car was missing a seat because the investigators removed it for additional forensic testing after they photographed the vehicle.  The lead detective gave unrefuted testimony to this effect, and photographs of the vehicle's interior taken before forensic investigators removed the seat further support this finding.  *See People v. Arias*, 159 P.3d 134, 137 (Colo. 2007) (appellate court defers to trial court's findings of fact if supported by the record).

The court also determined, and we agree, that the car's malfunctioning radio was not necessarily inconsistent with the victim's statement that she thought she heard Spanish music when she entered the car because a car's built-in radio is not the only device that could play music.  As noted by the court, portable audio devices also play music. *Cf. People v. Schrecongost*, 796 P.2d 45, 47 (Colo. App. 1990) (evidence was not apparently exculpatory when it would not necessarily exonerate defendant even if the evidence were as defendant alleged), *aff'd*, 810 P.2d 1068 (Colo. 1991).

We further note that defendant failed to show he was unable to present comparable evidence.  The purchaser of the car and defendant both testified as to the mechanical difficulties and malfunctioning radio that the car had before the purchaser made alterations.  The car's purchaser also testified that the car was missing a seat before he installed

a new one. *See People v. Rodriguez*, 914 P.2d 230, 271 (Colo. 1996) (Because a witness testified as to the bruise and welt that defendant claimed a destroyed photograph would have shown, the defendant failed to demonstrate the unavailability of comparable evidence.); *cf. People v. Braunthal*, 31 P.3d 167, 174 (Colo. 2001) (photographic stills obtained from videotape before it was destroyed were comparable evidence to the videotape; thus, defendant failed to show the unavailability of comparable evidence).

Accordingly, we perceive no error in the trial court's determination that defendant failed to show the alterations made to the car violated his due process rights.

### B. Upholstery

Last, defendant argues for the first time on appeal that the car was apparently exculpatory because the victim stated that she thought the seats were vinyl, whereas the seats in defendant's car were cloth. However, because defendant did not raise this issue before the trial court and has not asserted plain error on appeal, we do not address it here. *See People v. Johnson*, 74 P.3d 349, 356 (Colo. App. 2002).

Because the trial court did not err in determining that defendant failed to show that the alteration of the car violated his due process rights, we perceive no error in the court's denial of defendant's motion to dismiss the charges on that basis.

Docket No. 13, ex. C at 4-8.

Here, it was undisputed that the sale of the car by the police was not in bad faith.

Docket No. 13, ex. C at 5. The Colorado Court of Appeals rejected Mr. Flores'

argument that the apparent exculpatory value of the car was its existing mechanical

deficiencies before it was sold based on trial testimony that the forensic investigators

conducted every test they could, discovered no additional physical evidence, and

determined there was no apparent reason to keep the car. This finding, which is

entitled to a presumption of correctness that Mr. Flores did not attempt to rebut, *see* 28

U.S.C. § 2254(e)(1), established that the evidence could not have been "expected to

play a significant role in [Applicant's] defense." *Trombetta*, 467 U.S. at 488.  Moreover, Mr. Flores fails to indicate what, if any, additional tests could have been performed.  As such, the car, at best, was potentially useful, its exculpatory value was not apparent, and the lack of bad faith by police was fatal.  *See Youngblood*, 488 U.S. at 57-58.

Although the Colorado Court of Appeals' opinion did not cite to or base its conclusion on federal constitutional law, the state appeals court's analysis is consistent with Supreme Court precedent, and its decision must be viewed with deference.  *See Harrington*, 131 S. Ct. at 784, *Early*, 537 U.S. at 8; *Aycox*, 196 F.3d at 1177-78.  Given this level of deference, this Court does not find that the state appeals court's evaluation of Mr. Flores' claimed due process violation for the failure to preserve exculpatory evidence was contrary to or an unreasonable application of clearly established federal law.  Claim one's due process argument is meritless.

### 2.  Claim Two

In the partial dismissal order of June 13, 2012, the Court dismissed as procedurally barred the portion of claim two asserting ineffective assistance for counsel's failure to have employed other means to rebut the DNA evidence.  Still pending before the Court is the portion of claim two asserting counsel was ineffective for failing to have his DNA expert testify at trial disputing the reliability and accuracy of the prosecution's DNA evidence.

It was clearly established at the time of Mr. Flores' conviction that a defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Flores must demonstrate both that counsel's performance fell below an objective standard of reasonableness

17

and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is Mr. Flores' burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Mr. Flores must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether Mr. Flores has established prejudice, the Court must look at the totality of the evidence presented at trial and not just the evidence that is helpful to Applicant. *See Boyd*, 179 F.3d at 914.

Ineffective-assistance-of-counsel claims are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). If Mr. Flores fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claims must be dismissed. *See Strickland*, 466 U.S. at 697.

The *Strickland* two-part test also applies in the context of cases in which a defendant entered a guilty plea, which is not the case here. Therefore, two recent and

18

factually distinguishable decisions by the Supreme Court discussing the Sixth Amendment right to counsel during the plea-bargaining process do not alter the Court's analysis.  *See Lafler v. Cooper*, 132 S. Ct. 1376 (2012);  *Missouri v. Frye*, 132 S. Ct. 1399 (2012).

On postconviction appeal in *Flores II*, the Colorado Court of Appeals rejected Mr. Flores' ineffective-assistance-of-counsel claim, finding that "[t]he record supports the trial court's conclusion that trial counsel made a strategic decision not to call a DNA witness to the stand."  [Docket No. 13, ex. H at 7].  The state appeals court's finding is a factual determination, which is entitled to a presumption of correctness that Mr. Flores did not attempt to rebut.  *See* 28 U.S.C. § 2254(e)(1).

The government argued in state court that the choices counsel made were reasonable:

> Although trial counsel did not call the defense's DNA expert as a witness at trial, he extensively cross-examined the prosecution's DNA expert witnesses [Docket No. 29 CD:  R. Reporter's Transcript - Jan. 22, 2001a, at 79-85, 95-96; R. Reporter's Transcript - Jan. 23, 2001, at 75-102, 107-08], and argued in opening statement and closing argument that the DNA evidence was flawed [Docket No. 29 CD:  R. Reporter's Transcript - Jan. 18, 2001, at 37-45; R. Reporter's Transcript - Jan. 24, 2001, at 219-24].  His strategy was reasonable.

Docket No. 23, ex. L (People's answer brief) at 12.

Having reviewed the state court record, the Court agrees that defense counsel's strategic decision not to call the defense's DNA witness to the stand was not unreasonable.  Mr. Flores fails to explain what the defense's DNA expert would have testified to at trial that would have acquitted him.  Mr. Flores cannot show prejudice unless he can show how the result of the trial would have been different.  *Strickland*,

466 U.S. at 694.  In other words, Mr. Flores has to allege specifically how the testimony by the defense's DNA expert would have changed the outcome of the trial.  Finally, Applicant concedes in the original application that the evidence he maintains counsel should have presented at trial was unavailable until after trial.  Docket No. 1 at 15-16.  Counsel cannot have rendered deficient performance by failing to present evidence unavailable at the time of trial.

Mr. Flores has failed to overcome the "strong presumption" that counsel provided "reasonable professional assistance" by showing that the alleged errors were not sound strategy under the circumstances.  *Strickland*, 466 U.S. at 689.  The Court of Appeals' finding that "[t]he record supports the trial court's conclusion that trial counsel made a strategic decision not to call a DNA witness to the stand" [Docket No. 13, ex. H at 7] is not contrary to or an unreasonable application of federal law.  Claim two is without merit.

### 3.  Claim Five

In their pre-answer response, Respondents argued that claim five was exhausted only to the extent Mr. Flores challenged counsel's performance concerning the photo lineup.  Docket No. 13 at 16.  In the amended answer, Respondents clarify that Mr. Flores' broader claim in state court challenged "[c]ounsel's failure to call witnesses, present experts, or introduce any evidence on the theory of mistaken I.D."  Docket No. 23 at 6; Docket No. 13, ex. F (appellant's opening brief) at 17.  This latter claim, i.e., that trial counsel was ineffective in failing to present adequately a defense of misidentification, is the claim they contend Applicant raised in state court, is the claim Respondents address on the merits here, and is the claim the Court will address.

On postconviction appeal in *Flores II*, the Colorado Court of Appeals rejected Mr.

Flores' ineffective-assistance-of-counsel claim, finding that "the trial court was correct in

finding that counsel acted within his discretion in not consulting an expert on mistaken

identification as these were tactical decisions." Docket No. 13, ex. H at 7. The state

appeals court's finding is a factual determination, which is entitled to a presumption of

correctness that Mr. Flores did not attempt to rebut. *See* 28 U.S.C. § 2254(e)(1).

The government argued in state court that the choices counsel made were

reasonable:

> Trial counsel exhaustively cross-examined the victim and witnesses
> about discrepancies in their descriptions of the perpetrator and his car,
> and argued extensively that the defendant was falsely identified. [Docket
> No. 29 CD:  R. Reporter's Transcript - Jan. 18, 2001, at 37-45, 88-117,
> 156-65; R. Reporter's Transcript - Jan. 19, 2001, at 33-70, 78-83, 139-41,
> 142-59, 164-70; R. Reporter's Transcript - Jan. 22, 2001, at 22-24; R.
> Reporter's Transcript - Jan. 24, 2001, at 188-224]. His strategy was
> reasonable.

Docket No. 23, ex. L at 13-14.

Having reviewed the state court record, the Court agrees that counsel's tactical

decision not to consult an expert on mistaken identification was not unreasonable.   Mr.

Flores has failed to establish why expert testimony was necessary to challenge the

victim's identification.  He also has failed to identify an expert who should have testified

or proffered specific testimony such an expert would have provided.  Failure to do so is

fatal to Mr. Flores' claim. *See United States v. Eaton*, 20 F. App'x 763, 769-70 (10th

Cir. 2001) (no ineffective assistance of counsel in connection with witness's

identification of defendant where defendant never articulated what testimony an expert

could have given to rebut identification, and where counsel cross-examined witness,

challenged her description and her inability to identify defendant in a photo array, and elicited testimony that witness had seen defendant on television while in custody).

Mr. Flores has failed to overcome the "strong presumption" that counsel provided "reasonable professional assistance" by showing that the alleged errors were not sound strategy under the circumstances. *Strickland*, 466 U.S. at 689.  The Court of Appeals' finding that "the trial court was correct in not finding that counsel acted within his discretion in not consulting an expert on mistaken identification as these were tactical decisions" [Docket No. 13, ex. H at 7] is not contrary to or an unreasonable application of federal law.  Claim five is without merit.

### 4. Claim Seven

In the partial dismissal order of June 13, 2012, the Court dismissed as procedurally barred the portion of claim seven alleging cumulative error denying effective assistance based upon counsel's failure to investigate bite-mark evidence and retain an expert in adolescent victim psychology.  The exhausted portion of claim seven asserting cumulative error denying effective assistance based upon counsel's failure to develop expert testimony with regard to DNA evidence and eyewitness accuracy remains pending before the Court.

"Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors."  *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998).  As discussed in claim two above, the Colorado Court of Appeals rejected Mr. Flores' claim that trial counsel was ineffective for failing to have his DNA expert testify at trial disputing the reliability and accuracy of the prosecution's DNA evidence, finding that "[t]he record supports the trial court's conclusion that trial

counsel made a strategic decision not to call a DNA witness to the stand." [Docket No. 13, ex. H at 7]. In addition, the state appeal court found the trial court "was correct in finding that counsel acted within his discretion in not consulting an expert on mistaken identification." *Id.* Calling these exercises of counsel's discretion "tactical decisions," the state appeals court concluded that each claim of ineffective assistance upon which Mr. Flores based his cumulative error claim, including the failure to call a DNA expert as a witness, failed to meet the *Strickland* test. [Docket No. 13, ex. H at 7]. "Because the alleged errors of which [Mr. Flores] complains did not, singly or cumulatively, constitute error, he is not entitled to relief on a theory of cumulative error. *Id.* at 8.

Mr. Flores' failure to establish error by trial counsel precludes him from asserting cumulative error based upon non-errors. *Moore*, 153 F.3d at 1113. In other words, given Mr. Flores' failure to establish that counsel's alleged errors concerning the development of expert testimony with regard to DNA evidence and eyewitness accuracy were individually erroneous, he has no basis upon which to establish cumulative error. The Court of Appeals' finding is not contrary to or an unreasonable application of federal law. Claim seven is without merit.

## IV. CONCLUSION

For the reasons stated above, the application will be denied.

Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Mr. Flores files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States

Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is

ORDERED that the habeas corpus application is denied, and the action is dismissed with prejudice.  It is further

ORDERED that each party shall bear his own costs and attorney's fees.  It is further

ORDERED that no certificate of appealability will issue because Applicant, Reynoldo L. Flores, has not made a substantial showing of the denial of a constitutional right.  It is further

ORDERED that leave to proceed *in forma pauperis* on appeal is denied.


DATED November 20, 2012.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge